# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| L.E., by and through their parent and next friend, SARA CAVORLEY *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>CHRIS RAGSDALE, in his official capacity as Superintendent of Cobb County School District *et al.*,<br><br>    *Defendants*. | CIVIL ACTION NO:<br><br>1:21-cv-4076-TCB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down."[1]

Cobb County remains in a state of emergency, with COVID-19 transmission rates over three times the "high transmission" rate designated by the Cobb & Douglas Public Health Department ("CDPH"). Two new pediatric deaths from COVID-19 were reported in Georgia last week. To safely attend school in-person, given their disabilities, Plaintiffs requested reasonable, necessary modifications to

---

[1] Pres. George H.W. Bush Remarks on Signing the Americans with Disabilities Act, ADA.GOV (July 26, 1990), https://www.ada.gov/ghw_bush_ada_remarks.html.

1

the Cobb County School District's ("District") ineffective 2021-2022 Public Health Protocols ("21-22 Protocols"), including universal indoor masking. Now describing Plaintiffs' requests as "non-sensical," the District has denied or ignored them.

Reasonable minds do not disagree -- multilayered mitigation strategies, including universal indoor masking, are effective and necessary to ensure Plaintiffs can access a safe, in-person education. The District argued this truth to this Court in April 2021: "[r]equiring students to wear masks . . . is *at the top of [the CDC's] list of key prevention strategies* for safe delivery of in-person instruction in schools."[2]

This is a matter of science and public health, not political debate. While the District claims that it has relied on verified public health data and scientific guidance to inform its recent decisions, it only cites a widely discredited pseudoscientist, whose opinions have been denounced by the public health and medical community. (2nd Schmidtke Decl. ¶ 6).

Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") obligate the District to identify and dismantle barriers that exclude students with disabilities. The District has the resources, experience, and knowledge to effectively mitigate the risk of COVID-19 in its

---

[2] Def.'s Resp. in Opp'n to Pls.' Mot. for TRO, *W.S. ex rel. Sonderman v. Ragsdale*, No. 1:21-cv-01560-TWT *9 (N.D. Ga. Apr. 29, 2021) (ECF No. 5) (internal citations omitted) (emphasis added).

schools and to eliminate the barriers excluding Plaintiffs from accessing an in-person education. The District simply lacks the will. And that defense is inadequate to avoid liability under the ADA and Section 504.

## ARGUMENT

### A. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

Under the ADA or Section 504, Plaintiffs must show that (1) they are qualified individuals with disabilities, (2) they have either been excluded from, or denied the benefits of, a service, program, or activity, or otherwise discriminated against by a public entity, and (3) the discrimination is on the basis of disability. *See Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

These elements and the plain statutory language allow Plaintiffs to pursue claims based on exclusion or denial of benefits *or* other discriminatory conduct. *See id.*; 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The ADA is meant to be "broadly construed to effectuate its remedial purposes." *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1325–26 (N.D. Ga. 2017) (citing *Kornblau v. Dade Cty.*, 86 F.3d 193, 194 (11th Cir. 1996) (internal citations omitted)). Various theories of discrimination exist under the ADA and Section 504.

Plaintiffs can prevail under the ADA or Section 504 by showing that the District engaged in any of the following discriminatory conduct: (1) excluded and

denied Plaintiffs the benefits of an in-person education on the basis of their disabilities; (2) denied them reasonable modifications that would allow them access to an in-person education; or (3) unnecessarily segregated and isolated Plaintiffs at home. And Plaintiffs need not show that the discrimination was direct, intentional, or outright. *See* 28 C.F.R. § 35.130(b)(3); 34 C.F.R. § 104.4(b)(4).

1. <u>Disparate treatment is not required to show discrimination</u>.

Plaintiffs neither allege a disparate treatment claim, nor need to show disparate treatment, to prove they were excluded or denied the benefits of an in-person education. The District incorrectly argues that it has not violated the ADA or Section 504 because Plaintiffs were "offered" the same educational services and subjected to the same "mask-optional" policy as their nondisabled peers. This Court has rejected that argument as a defense to liability:

> The ADA's language demonstrates a recognition by Congress that discrimination against persons with disabilities differs from discrimination on the basis of, for example, gender or race. Discrimination in latter instances has been judicially defined as disparate treatment on the basis of a certain characteristic that identifies an individual as a member of a protected class. However, a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed an accommodation. In the context of disability, therefore, equal treatment may not beget equality, and facially neutral policies may be, in fact, discriminatory if their effect is to keep persons with disabilities from enjoying the benefits of services that, by law, must be available to them.

4

*Belton v. Georgia*, No. 1:10-CV-0583-RWS, 2012 WL 1080304, at *9 (N.D. Ga., Mar. 30, 2012) (citing *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998)). Equal treatment and one-size-fits all programs can violate the ADA and Section 504 when such treatment, programs, and policies do not allow meaningful access to individuals with disabilities. *Id.*

The ADA and Section 504 implementing regulations expressly prohibit administering policies or methods of administration with a discriminatory *effect*, and this provision applies to facially neutral policies and practices, as well as facially exclusionary policies and practices, that deny individuals with disabilities a meaningful opportunity to participate. 28 C.F.R. § 35.130(b)(3); 34 C.F.R. § 104.4(b)(4); *Schwarz v. The Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153, 1181 (M.D. Fla. 2016).

The District concedes that Plaintiffs face a barrier to accessing their in-person education due to COVID-19. Yet, the District abandoned its effective, multilayered 2020-2021 COVID-19 prevention and mitigation strategy which would have allowed Plaintiffs to attend school in-person, and the District replaced it with the 21-22 Protocols which do not effectively mitigate the risk for Plaintiffs. The District's conduct, policies, and practices have excluded Plaintiffs from the benefits of their in-person education.

### 2. The District has not offered "reasonable accommodations" because Plaintiffs are unable to access an *in-person education*.

Plaintiffs are students with disabilities who require reasonable accommodations to access their in-person education due to the threat of COVID-19 in schools. The District argues that it has accommodated Plaintiffs by offering them a virtual education option. First, A.Z. *was not* offered access to the District's virtual program. (Zeigler Decl., Doc. [2-5] ¶¶ 14, 20). And more importantly, the District's argument fails because it has not accommodated Plaintiffs to allow them access to an *in-person education*, the benefit at issue.

Public entities cannot avoid liability by defining the scope of the benefit so broadly as to avoid the question of discriminatory effects. *People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076, 1158 (N.D. Ala. 2020); *Nat'l Federation of the Blind v. Lamone*, 813 F.3d 494, 503-04 (4th Cir. 2016). Plaintiffs seek meaningful access to an *in-person education*, a benefit to which they are entitled because the District makes it available to nondisabled students. *See id*.

Plaintiffs are entitled to reasonable accommodations that are effective and necessary to allow them meaningful access to an in-person education. *See Alboniga v. Sch. Bd. of Broward Cnty.*, 87 F. Supp. 3d 1319 (2015). But the District's 21-22 Protocols, which include a mask-optional policy, are ineffective to allow Plaintiffs in-person access.

Public health and medical experts agree that universal indoor masking is effective and necessary for reducing and preventing the spread of COVID-19, especially in schools. When the District defended its mask-mandate policy in April 2021, it relied on Dr. Janet Memark, CDPH's District Health Director, and Melanie Bales, the District's Nursing Supervisor, who offered declarations about the "overwhelming medical evidence that wearing masks is an important, effective tool in preventing and reducing the spread of COVID-19." (Bales Decl. filed Apr. 29, 2021, Ex. 1 ¶ 10; Memark Decl., filed Apr. 29, 2021, Ex. 2 ¶ 16;). Bales stated "that masks remain a critical tool in making schools a safe place for in-person learning and working." (Ex. 1 ¶ 19). Now, Dr. Memark and Nurse Bales are conspicuously silent. Instead, the District disregards the same local, state, and federal health authorities on which it recently relied and replaces them with Dr. Bhattacharya, who believes in the removal of all COVID-19 protections to surrender lives and acquire herd immunity more quickly. (2nd Schmidtke Decl. ¶ 6).

Additionally, the District does not indicate that it engages in any on-site surveillance testing, despite the availability of a free and funded program by the CDC/DPH. (Schmidtke #2 Decl. ¶ 10). The District's contact tracing and quarantine strategy is limited to self-reports by parents. (*Id.*). A special education teacher has expressed concern over the lack of effective mitigation strategies in the District, like

plastic desk separators, appropriate ventilation, and effective contact tracing. (Grimmke Decl. ¶¶ 10, 13). Defendant Banks, the Board's vice-chairman, continues to discourage vaccinations from his official email account. On October 3, 2021, after the filing of this lawsuit, Defendant Banks emailed his constituents, falsely claiming that "[t]he number of deaths resulting directly from Covid shots in the US alone are at a minimum of 122,592 based on the CDC September 24 report[,]" and "[t]he government is intentionally killing its citizens." (Hardy Decl. ¶ 5).

Plaintiffs have requested a multilayered CDC-compliant COVID-19 mitigation policy or practice as an accommodation, which is reasonable and necessary, to meaningfully access an in-person education. Plaintiffs could return to school in-person with that policy or practice. (Baird Decl. ¶ 26; Cavorley Decl. ¶ 24; Shirley Decl. ¶ 18; Zeigler Decl. ¶ 27). But the District's current 21-22 Protocols bar schools from adopting universal indoor masking and other CDC guidelines to reasonably accommodate Plaintiffs. (Baird Decl. ¶ 20; Zeigler Suppl. Decl. ¶¶ 5-8).

### 3. The District has not shown that Plaintiffs' requested modifications would fundamentally alter its programs.

One of the only defenses for failure to make a reasonable accommodation in violation of the ADA and Section 504 is an affirmative showing that such a modification would "fundamentally alter the nature of the services, program, or

activity." 28 CFR § 35.130(b)(7). The District fails to meet this standard. Just four months ago, the District maintained, and vigorously defended, a plan that is consistent with Plaintiffs' current requests. Although it threatens to close schools if Plaintiffs prevail in this matter, it offers no explanation why. Nor does the District offer any evidence that other students will no longer "be able to attend" in-person school if Plaintiffs are accommodated. Certainly students with disabilities, who are unable to comply with the mask-mandate or other policies, could be reasonably accommodated. Dr. Lewkowicz, a senior scientist at the Yale School of Medicine on cognition, speech, and language for children, rejects any argument that the potential inconvenience makes masking "unreasonable." Masks do not cause harm to K-12 children. (Crater Decl., Doc. [2-6] ¶¶66-69); *generally* Lewkowicz Decl.) "The impact of masks on children's cognitive development does not justify a prohibition on masking in schools[.]" (Lewkowicz Decl. ¶ 9).

      4. <u>Plaintiffs are not required to administratively exhaust their claims</u>.

The ADA and Section 504 prohibit disability-based discrimination by ensuring equal access to all facilities, services, and programs, whereas the Individuals with Disabilities Education Act ("IDEA") guarantees individually tailored educational services to ensure a free appropriate public education ("FAPE"). *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 756 (2017). Plaintiffs are not required

to exhaust their administrative remedies under the IDEA because the gravamen of their complaint is a denial of access to their in-person education programs, services, and facilities, not a denial of a FAPE.

Plaintiffs bringing ADA or Section 504 claims need only exhaust the IDEA's administrative procedures if the "substance, or gravamen of the plaintiff's complaint" seeks relief from a denial of a FAPE under the IDEA. *Fry*, at 752 (citing 20 U.S.C. § 1415(l)). Courts generally ask two hypothetical questions to identify the gravamen of the complaint: (1) could the plaintiff bring essentially the same claim if the alleged conduct occurred at a different public facility, like a library, and (2), could an adult at the school, like an employee, bring essentially the same grievance? *Fry*, at 756. If the answer to these questions is yes, a denial of an IDEA FAPE is unlikely the true subject of the complaint, and exhaustion is not required. *Id*.

The *Fry* hypotheticals show that a denial of an IDEA FAPE is not the true subject of Plaintiffs' complaint. *See id*. First, Plaintiffs could have brought essentially the same claim against a public library because, without effective COVID-19 mitigation measures, Plaintiffs could not access a library given their disabilities.[3] Second, an adult with similar disabilities as Plaintiffs could bring

---

[3] The Cobb County Public Library, as with all Cobb County public facilities, follow public health guidance, including the requirement of indoor masking for all

10

essentially the same grievance over denied access to school due to the District's lack of COVID-19 safety measures. *See id*. In each case, "[t]he suit would have nothing to do with the provision of education services." *See id*. at 758. In other words, Plaintiffs' "complaint alleges only disability-based discrimination, without making any reference to the adequacy of special education services [Plaintiffs'] school[s] provided." *Id.*

The question is not whether Plaintiffs' "injuries were, broadly speaking, 'educational' in nature . . . . That is not the same as asking whether the gravamen of [plaintiff's] complaint charges, and seeks relief for, the denial of a FAPE." *See id.* at 757-58. Disability-related discrimination can, and likely will, also lead to a denial of an IDEA FAPE. "After all, if the child cannot get inside the school, he cannot receive instruction there[.]" *Id.* at 754. Exhaustion is unnecessary simply because the discrimination could result in a IDEA FAPE violation. *J.S. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 986-987 (11th Cir. 2017) (disabled student's exclusion and isolation from the classroom and peers went beyond a mere FAPE violation); *see*

---

employees, visitors, contractors, and vendors. *See* Cobb Cnty. Gov. (July 31, 2021), https://www.cobbcounty.org/communications/news/public-health-reports-rapid-rise-covid-19-cases.

11

*also United States v. Georgia*, 461 F. Supp. 3d 1315, 1326 (N.D. Ga. 2020) ("[T]he breadth of Plaintiff's claims goes much further [than a denial of a FAPE].").

The District's reliance on *Hayes v. DeSantis* is misplaced, No. 1:21-cv-22863, 2021 WL 4236698 (S.D. Fla. Sept. 15, 2021). First, the *Hayes* complaint was "replete with explicit references to alleged denials of FAPE." *See id.* at *7. Second, the *Hayes* motion sought an injunction "to ensure that each child receives a **free and appropriate education** in the least restrictive and most integrated environment[.]" *see id*. (emphasis and alteration in original). Here, Plaintiffs' complaint does not reference an IDEA FAPE, and Plaintiffs' motion only seeks the necessary accommodations to access school in-person. (Compl., Doc. [1]; Pls.' Mot. for TRO and PI, Doc. [2]).

Plaintiffs are unable to access their school facilities, services, and programs because of their disability. This denial is strictly contemplated by the ADA and Section 504, not the IDEA, and Plaintiffs need not exhaust.

### B. THE DISTRICT'S CURRENT POLICIES WILL CAUSE IRREPARABLE HARM

Without intervention, Plaintiffs will suffer irreparable harm because they must choose between exposure to an increased risk from COVID-19 infection and its long term effects, or be forced to stay home and be denied the benefits of an in-person

education. (Baird Decl., [2-2] ¶ 30). *See G.S. v. Lee,* No. 21-cv-02552-SHL, 2021 WL 4057812, at *17 (W.D. Tenn. Sept. 17, 2021).

The District advances two erroneous legal propositions that Plaintiffs' will not suffer irreparable harm. First, Defendants rely on dicta from an unpublished opinion to argue that students can never allege irreparable harm unless they are denied "educational services altogether." *See C.B. v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 261 F. App'x 192, 194 (11th Cir. 2008). The court noted that "situations where students were at risk of being excluded from school attendance or participation in school activities for an entire year" would be factually distinguishable from *C.B.* because the student was merely denied his preferred in-person education choice. *Id.* at 194 ("[T]he evidence in the record indicates that the School Board has not denied educational services to C.B. altogether but has denied authorization for him to receive those services at the school of his choice.").

Second, Defendants rely on one line from a quote restated by a Florida district court order on cross-motions for summary judgment involving a challenge under the Federal Telecommunication Act of 1996, to argue a heightened standard to the Eleventh Circuit's irreparable harm element for preliminary injunctions. *See Verizon Wireless Pers. Commc'ns LP v. City of Jacksonville, Fla.*, 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009) (explaining available remedy of mandatory permanent

injunctive under the Federal Telecommunications Act) (quoting *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 99 F. Supp. 2d 381, 389 (S.D.N.Y. 2000)). The remedial scheme under the Federal Telecommunications Act is inapplicable to this case.[4] Plaintiffs submit that the correct standard and applicable caselaw in the Eleventh Circuit for a preliminary injunction are outlined in Plaintiffs' Memorandum of Law in Support of the Motion, (Pls.' Mem. Supp. Mot, Doc. [2-1] at 22-24). By that standard, Plaintiffs are suffering irreparable harm due to their exclusion from in-person school.

### C. AN INJUNCTION WOULD NOT HARM THE DISTRICT

1. Complying with federal law will not "harm" the District.

Despite the District's arguments to the contrary, its "operational autonomy" ends where its obligations under federal law begin. It has no discretionary authority to implement policies and practices that violate federal law and discriminate against students, and if the District's argument was successful it would eviscerate the ADA and Section 504 as applied to students.

---

[4] Applicable caselaw contradicts the District's assertions that Plaintiffs' relief would be a "mandatory injunction," (Defs.' Resp., Doc. [43] at 33), because the status quo would be at the time that the District was following CDC guidelines prior to June 2021, making Plaintiffs' motion for "prohibitory injunctive relief." *See Disability Rights S.C. v. McMaster*, No. 3:21-02728-MGL, 2021 WL 4444841 (D.S.C. Sept. 28, 2021)

An injunction would not unduly burden or disrupt the District's operations. The District voluntarily complied with CDC guidelines and vigorously defended those policies, and never claimed a burden or disruption when it received more than $160 million dollars to safely reopen schools in July 2021. Without reason or justification, the District now claims that it would "close in-person instruction if Plaintiffs receive the totality of relief sought." The District's claim can reasonably be interpreted as retaliatory towards Plaintiffs for exercising their rights, and prohibited under the ADA and Section 504. *See* 42 U.S.C. § 12203(a); 34 C.F.R. § 104.61; 34 C.F.R. §100.7(e).

2. <u>The public is served when students can attend school in-person</u>

The CDC recommends that children attend school full-time in-person with multilayered prevention and mitigation strategies in place, including universal indoor masking regardless of vaccination status. Plaintiffs are not seeking individualized education decisions, but reasonable accommodations that give them access to an in-person education safely. The barrier to accessing those accommodations is the District's strict reliance on the current 21-22 Protocols.

## CONCLUSION

Because the District refuses to knock down its "shameful wall of exclusion," this Court should enjoin the District from causing further irreparable harm.

Dated: October 13, 2021.

        Respectfully submitted,

        **SOUTHERN POVERTY LAW CENTER**

        /s/ *Michael J. Tafelski*
        Michael J. Tafelski
        Ga. Bar No. 507007
        Eugene Choi
        Ga. Bar No. 121626
        Claire Sherburne
        Ga. Bar No. 732244
        Brock Boone (*pro hac vice* forthcoming)
        Ala. Bar No. 2864-L11E
        P.O. Box 1287
        Decatur, GA 30031-1287
        (334) 956-8273
        michael.tafelski@splcenter.org
        eugene.choi@splcenter.org
        claire.sherburne@splcenter.org
        brock.boone@splcenter.org

        **LAW OFFICE OF ALLISON B. VROLIJK**

        /s/ *Allison B. Vrolijk*
        Allison B. Vrolijk
        Ga. Bar No. 299360
        885 Woodstock Road, Suite 430-318
        Roswell, GA 30075
        (770) 587-9228
        allison@vrolijklaw.com

        **GOODMARK LAW FIRM**

        /s/ *Craig Goodmark*
        Craig Goodmark
        Ga. Bar No. 301428

1425 Dutch Valley Place, Suite A
Atlanta, GA 30324
(404) 719-4848
cgoodmark@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with L.R. 5.1B and 7.1 and that this brief is published in 14-point Times New Roman font.

## CERTIFICATE OF SERVICE

I hereby certify that I have this 13th day of October, 2021, filed the within and foregoing PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION upon all parties of record to this matter by CM/ECF system, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Sherry H. Culves
Ralph Culpepper III
Jeffrey R. Daniel
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
sherry.culves@nelsonmullins.com
ralph.culpepper@nelsonmullins.com
jeff.daniel@nelsonmullins.com

Respectfully submitted,

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Attorney for Plaintiffs