**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| L.E., by and through their parent and next friend, SARA CAVORLEY *et al.*, <br><br>      Plaintiffs, <br><br> v. <br><br> CHRIS RAGSDALE, in his official capacity as Superintendent of Cobb County School District *et al.*, <br><br>      Defendants. | CIVIL ACTION FILE NO. <br><br> 1:21-CV-04076-TCB |

**PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The Cobb County School District's ("the District") blanket ban policy, which preemptively prohibits non-frivolous, individualized reasonable accommodation requests is discriminatory and violates the Americans with Disabilities Act ("The ADA") and Section 504 of the Rehabilitation Act ("Section 504"). For the past eighteen months, the District has acted with callous disregard for Students' lives and education and the federal laws enacted to protect them. Students' accommodation

1

requests for science-based Centers for Disease Control and Prevention ("CDC") prevention strategies are not "lip service" but the protections they need to live and attend school in person like their non-disabled peers.

The District views Students and their respective educations as disposable casualties of the pandemic. The District's stubborn refusal to even *consider* modifying its policies and practices to accommodate Students and align with federal law demands this Court's intervention. Students cannot wait longer for relief from the District's discriminatory actions. Students' lives and education have been harmed and will continue to be harmed absent an injunction allowing school staff and Students' education teams to consider and implement the necessary, reasonable accommodations to which they are entitled.

## ARGUMENT

**A. The District offers no legal justification allowing it to disregard its obligation to make an "individualized inquiry" into Students' requested accommodations.**

The District does not refute that Students are qualified individuals with disabilities who are entitled to reasonable accommodations. Other than masking, the District does not refute Students' arguments that all of the CDC prevention

2

strategies[1] designed to reduce the spread of COVID-19 should be considered by Students' teams as potential accommodations. *See L.E. v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1301 (11th Cir. 2022) ("[The Students] are asking this Court for more than just a mask mandate."). Finally, the District does not refute that its policy functions as a blanket ban prohibiting masking as an accommodation in any form or to any degree. *See generally* Defs' Resp., Doc. [76]. This is a violation of the ADA and Section 504.

1) <u>The District is legally obligated to make an individualized inquiry into requested accommodations that are facially reasonable.</u>

Students are entitled to reasonable accommodations to allow them meaningful access to their in-person education. *See* 34 C.F.R. §35.130(b)(7); *L.E.*, 55 F.4th at 1302. When a qualified individual with a disability requests an accommodation or modification to a public entity's policies, programs, or services, the Supreme Court has explained,

> [A]n *individualized inquiry* must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as

---

[1] Examples of other CDC prevention strategies that the District refuses to consider include specific isolation and precaution procedures when exposed or infected, social distancing, avoid crowding, improving ventilation systems, moving indoor activities to outdoors, contact tracing, and screen testing after extended breaks and high-risk activities involving forceful exhalation.

> well as necessary for that person, and yet at the same time
> not work a fundamental alteration.

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001) (emphasis added). Public entities must conduct this individualized inquiry upon a showing that the requested accommodation is "facially reasonable," which requires "only a 'light burden of production.'" *Wright v. N.Y. Dep't of Corrs*, 831 F.3d 64, 76 (2d Cir. 2016) (citation omitted); *see also Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*, 938 F.3d 1259, 1265 (11th Cir. 2019) (holding that "a showing of a facially reasonable request . . . presents a relatively low bar.") (citing *U.S. Airways v. Barnett*, 535 U.S. 391, 401-02 (2002)). The public entity must conduct a "meaningful review of the requested accommodation to determine if such an accommodation is required by law." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008) (citation omitted).

As it relates to COVID-19, public health authorities like the CDC have emphasized the importance of this individualized inquiry and recommended that schools "*consider additional prevention strategies* to accommodate the health and safety of students with disabilities."[2] And students at risk of severe illness "*may need*

---

[2] CDC, Operational Guidance for K-12 Schools and Early Care and Education Programs to Support Safe In-Person Learning, https://www.cdc.gov/coronavirus/ 2019-ncov/community/schools-childcare/k-12-childcare-guidance.html (updated Oct. 5, 2022) (emphasis added).

*additional protections* to ensure they can remain safely in the classroom."[3] The CDC also recommends that people who spend time indoors with individuals at risk for getting very sick with COVID-19 should "*consider taking extra precautions* (for example, wearing a mask) even when the COVID-19 Community Level is not high."[4] The U.S. Department of Education reiterates that this approach is the law.[5]

The District offers no legal argument as to why it should be exempt from its legal obligation to conduct an individualized inquiry into Students' requested accommodations. *See PGA Tour, Inc.*, 532 U.S. at 688. Instead, the District reiterates its prior arguments as to why a universal mask mandate[6] should not be imposed, claiming that Students want to "turn back the clock." *See* Defs' Resp., Doc. [76] at 3. However, Students no longer seek a universal, or even school-wide, masking policy. Rather, Students want their teams to consider, on a case-by-case basis, what and how individualized, tailored accommodations, including masking, should be implemented to accommodate students with disabilities, just as the CDC

---

[3] *Id*. (emphasis added).

[4] *Id*. (emphasis added).

[5] *See* U.S. Dept. of Educ., *Letter to Educators and Parents Regarding New CDC Recommendations and their Impact on Children with Disabilities*, Pls.' Ex. 3, Doc. [74-4] at 3.

[6] The term, "universal mask mandate," refers to indoor masking for all teachers, staff, students, and visitors within the school district.

recommends and the U.S. Department of Education requires. *See* Pls.' Am. Mot. for TRO and Prelim. Inj., Doc. [74] at 7-8.

2) <u>Masking is not facially unreasonable or frivolous.</u>

Masking is a facially reasonable and effective accommodation that would allow Students the safe, meaningful access that they seek. The District has a blanket ban on masking as an accommodation. To forego its obligation to make an individualized inquiry, the District must show that masking, in any form and to any degree, is so frivolous that it does not warrant consideration by Students' teams. *See Wright*, 831 F.3d at 76, 78 (striking down a blanket ban and holding that once a disabled person requests a "non-frivolous accommodation, the accommodation should not be denied without an individualized inquiry into its reasonableness"). The District cannot make that showing because masking is not a frivolous accommodation to combat the spread of the COVID-19 *respiratory* virus and the risk that it presents to Students. *See* (Yancey Decl. Doc. [74-11] ¶¶ 9, 24-27; Crater Decl., Doc. [74-7] ¶¶ 19-21).

The District cites online studies regarding the effectiveness of universal mask mandates. Again, Students are not asking for universal mask mandates, or even masking of large groups, rather, they are seeking consideration of masking for individuals in close proximity to Students on "an individual basis." Even the

District's purported "gold standard" study states, "[t]he Cochrane study did not conclude that masks, on an individual basis, have no effect." *See* Defs.' Resp., Doc. [76] at 8. This is precisely what Students are seeking.

The District also cites a National Institute of Health study that "found that mask requirements were associated with a reduction in COVID-19 outbreaks whilst another multi-district U.S. study reported lower in-school transmission associated with universal masking." *See id.* Despite a possibility of "confounding variables," none of these studies conclude that masking is a frivolous or ineffective strategy to reduce COVID-19 transmission.[7] *See Wright*, 831 F.3d at 78. Indeed, the District's position today directly conflicts with the position it argued before this same Court when it defended its prior mask mandate. *See* Resp. in Opp. to Mot. for TRO at 9, *W.S. v. Ragsdale*, 540 F. Supp. 3d 1215 (N.D. Ga. May 2021), ECF No. 5 ("[T]he reason for [masks'] effectiveness is obvious: they provide a fabric barrier that helps reduce the amount of virus carrying aerosol droplets in the air."). Despite the changed COVID-19 landscape, this fundamental reasoning has remained the same,

---

[7] The District also cites to Dr. Bhattacharya's October 2021 Declaration that purportedly lays out a cost-benefit analysis of universal mask mandates, which again, is inapposite to case at hand. *See* Defs.' Resp. Doc. [75-3]. *But see* Schmidtke Second Decl., Doc. [50-2] ¶ 6.

and masking remains a facially reasonable accommodation[8] for students with disabilities who are vulnerable to respiratory illness. The District must therefore consider it.

3) Students have not been offered an effective alternative to the District's blanket ban on masking.

The District attempts to justify its blanket ban on masking as an accommodation by arguing that its district-wide protocols function as sufficient alternatives to a mask accommodation, and thus, masking is a matter of preference for Students. *See* Defs.' Resp. Doc. [76] at 11-12, 34-35. However, a "public entity is not permitted to survey the universe of possible accommodations or modifications and determine for the individual, what, in its estimation, is the best or most 'reasonable,' approach." *Alboniga v. Sch. Bd. of Broward Cnty. Fla.*, 87 F. Supp. 3d 1319, 1339-40 (S.D. Fla. 2015) (citing *U.S. Airways v. Barnett*, 535 U.S. 391, 402 (2022)). And it certainly cannot rely on ineffective alternatives to Students' requested accommodations to circumvent its obligation to conduct an individualized

---

[8] Even this Court has recognized the role of masking in fighting the spread of COVID-19. *See* General Order 21-04 (Oct. 3, 2022) ("[A]ll jurors must wear a mask that completely covers their nose and mouth while assembling for jury duty, during jury orientation, and until otherwise directed by the presiding judge that masks may be removed."), *available at* https://www.gand.uscourts.gov/sites/gand/files/general-ordes/NDGA_GenOrder21_04_4amd.pdf.

analysis. *See Wright*, 831 F.3d at 72 (quoting *Dean v. Univ. At Buffalo Sch. Of Med. & Biomedical Scis.*, 804 3d. 178, 179 (2d Cir. 2015) ("The hallmark of a reasonable accommodation is its effectiveness.").

The district-wide protocols of "disinfecting surfaces, replacing air filters, vacuuming carpets, and promoting good hygiene" are not effective alternatives to masking on an individual basis as an accommodation, and the District has presented no evidence to show that they are. *See* Defs.' Resp. Doc. [76] at 11-12, 34-35. And the District's assurance that Students are free to wear masks ignores expert findings that masking is most effective as a form of *source control*. *See* (Yancey Decl., Doc. [74-11]. ¶ 9). "COVID-19 is a respiratory disease [that] spreads mainly from person to person through respiratory droplets and small particles produced when an infected person coughs, sneezes, or talks."[9] Students request an individualized inquiry into the use of masking as an accommodation because it is the most effective tool to block viral respiratory particles. *See* (Yancey Decl. Doc. [74-11] ¶ 9; Crater Decl., Doc. [74-7] ¶ 20). The court's rejection of similar arguments in *Alboniga* is instructive:

> "[R]efusing Plaintiff's requested accommodation if it is
> reasonable in favor of one the School Board prefers is akin

---

[9] CDC, Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/dotw/covid-19/index.html#:~:text=COVID%2D19%20is%20a%20respiratory,coughs%2C%20sneezes%2C%20or%20talks (last visited Mar. 15, 2023).

> to allowing a public entity to dictate the type of services a disabled person needs in contravention of that person's own decisions regarding his own life and care[;] it would be like refusing a blind person access for her service animal because, in the public entity's view, a cane works fine. That result would be absurd."

*Id.* (citing *Sabal Palm Condominiums v. Fischer*, 6 F. Supp. 3d 1272, 1282-83 (S.D. Fla. 2014)). Students are not insisting on their preferred accommodations over other similarly effective, individualized accommodations. They are requesting an accommodation that is both reasonable and *effective* at allowing them safe and meaningful access to in-person school. Allowing the District to refuse to consider Students' accommodation request and enforce its blanket ban here would produce an "absurd" and unlawful result. *See id* at 1340-41.

4) <u>Providing a virtual school program instead of accommodations for in-person schooling leads to the unjustified isolation of students from school and violates the ADA.</u>

Despite the Eleventh Circuit's ruling in this case, the District continues to suggest that isolating Students in virtual school justifies its refusal to consider their requested accommodations for in-person school. *See L.E.*, 55 F.4th at 1303-04; Defs.' Resp. Doc. [76] at 13, 16. The Eleventh Circuit found that an unjustified isolation theory properly applies to students relegated to isolated educational placements pursuant to *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999). *See L.E.*, 55 F.4th at 1303. The District violates *Olmstead* to the extent that it relies

10

on isolated educational placements like virtual programming instead of providing accommodations necessary to allow access to in-person school.

The District also engages in circular reasoning here, attempting to justify its virtual program by arguing that Students who are relegated to virtual school or homebound services "have been free to return to their schools in person whenever they choose." *Id.* at 36. However, Students' mere physical access to school does not relieve the District's affirmative obligation to remove impediments to access based on their disabilities. *See Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001). The District's suggestion that students with disabilities are not entitled to accommodations if they can physically "enter their school building" would eviscerate students' right to accommodations. Defs.' Resp. Doc. [76] at 33. For example, the District would be permitted to ban wheelchair ramps for students with mobility-related disabilities so long as they could physically enter the building by another method. This reasoning would be absurd and counter to the clear purpose of the ADA, the purpose of which is to remove *barriers* to access in addition to outright exclusion. 42 U.S.C. § 12101 (a)(5). Yet, this is the reasoning that the District advances.

11

### B. The District misapplies the law on irreparable harm.

The District presents no legal authority or factual allegation sufficient to refute Students' showing of irreparable harm. *Compare* Pls.' Memo. In Supp. of Am. Mot. for TRO and Prelim. Inj., Doc. [74-1] at 20-24, *with* Defs.' Resp. Doc. [76] at 28-31. Instead, the District advances two legally erroneous arguments.

First, the District cites to *Arc of Iowa v. Reynolds*, 33 F.4th 1042 (8th Cir. 2022), where student plaintiffs sought a preliminary injunction to enjoin a state law that broadly prohibited the use of masks in all schools and resulted in schools ending their universal mask mandates, No. 4:21-cv-00264, 2022 WL 16627483, at *1 (S.D. Iowa, Nov. 1, 2022) (summarizing the history of the case). The preliminary injunction was granted, the Eighth Circuit affirmed, but upon later rehearing, the order was vacated as moot. *Id.* at *1-3 (citations omitted).

In vacating the order as moot,[10] however, the Eighth Circuit was clear that the challenged state law did not conflict with any other state or federal law, and thus should not be completely enjoined. *Arc of Iowa*, 33 F.4th at 1045. The court did not reverse its holding that the plaintiffs met their burden to show irreparable harm, *see*

---

[10] The Eleventh Circuit has specifically held that Students' claims for injunctive relief are not moot. *See L.E.*, 55 F.4th at 1300 ("The Students' prayer for relief in their motion for preliminary injunction and temporary restraining order saves this case from mootness.").

24 F.4th 1162, 1180 (8th Cir. 2022), nor did it reverse the district court's holding of the same, *see* 566 F. Supp. 3d 921, 935. Rather, the court simply stated that the plaintiffs no longer need a universal mask mandate, and the challenged state law need not be enjoined in order for the plaintiffs to exercise their disability rights under federal law, i.e., the challenged state law did not operate as a blanket ban on rights prescribed by other state or federal law. On remand, the district court held:

> Accordingly, under Iowa Code section 280.31, a disabled student may request a reasonable accommodation that requires masks to be worn by teachers, aides, other students, and anyone else near or interacting with the disabled student to allow the disabled student making the request to safely and readily access their school and in-person learning. Any school district receiving such an accommodation request must consider it just as they would any other request for a reasonable modification made under the ADA or the Rehabilitation Act.

*Arc of Iowa*, 2022 WL 16627483 at *10. *Arc of Iowa* does not establish that Students do not face the threat of irreparable harm from a blanket ban on individualized accommodations. *See id.*

The second erroneous argument is that Students must "show that they *will suffer* irreparable harm," and that "they *will suffer* complications or severe illness." *See* Defs.' Resp., Doc. [76] at 31 (emphasis added). However, what Students must show is that they are "*likely to suffer* irreparable harm in the absence of preliminary relief." *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (emphasis added). Although Students must show more than the "possibility of

13

irreparable harm," they do not have to prove that a threat of irreparable harm will certainly occur, but only that it is likely. *See id.* at 22.

Courts consistently hold that a threat to a child's health and life constitutes irreparable harm. *See* Pls.' Memo in Supp of Am. Mot for TRO and Prelim. Inj., Doc. [74-1] at 20-24. Children need not subject themselves to certain illness or death in order to receive relief. The District's suggestion to the contrary is absurd.

Medical experts have explicitly identified the threat of harm that Students face based on their disabilities, and the District has presented no evidence to refute them.[11] *See* (Yancey Decl., Doc. [74-11] ¶¶ 39-44; Crater Decl., Doc. [74-7] ¶ 21; Phan Decl., Doc. [74-9] ¶¶ 5-8). Additionally, this Court has the benefit of hindsight to determine the likelihood of harm that Students face. During the pendency of this case, both B.B. and L.E. have contracted the ongoing COVID-19 Omicron variant, requiring medical treatment and resulting in a significant amount of missed school.[12] *See* (Baird Decl., Doc. [74-5] ¶¶ 15-16; Cavorley Decl., Doc. [74-6] ¶¶ 10, 12, 14). L.E. is still experiencing COVID-19 symptoms today. *See* (Cavorley Decl., Doc.

---

[11] Even the District's expert acknowledges that the "mortality danger from COVID-19 varies substantially" based in part on "chronic disease indicators" and "severe comorbid chronic conditions." *See* Bhattacharya Decl., Doc. [75-3] at 41.

[12] The District does not refute Students' argument that a loss of educational opportunities constitutes irreparable harm. *See* Pls.' Memo in Supp of Am. Mot for TRO and Prelim. Inj., Doc. [74-1] at 22-24.

[74-6] ¶ 14). Less than 2 months ago, B.B.'s classroom teacher tested positive for COVID-19. *See* (Baird Decl., Doc. [74-5] ¶ 18). The irreparable harm Students face is likely.

### C. The District conflates the law regarding the balance of harms.

Like its prior arguments, the District's balance of harm argument refuses to acknowledge that Students are not asking for a universal or large-scale mask mandate. *See* Defs.' Resp., Doc. [76] at 39. Students are asking that their school teams be permitted to consider all of the CDC prevention strategies as accommodations to their disability on an individual basis. Students are not asking that the District change its district-wide protocols to fit them, rather, they are asking for reasonable accommodations or modifications to the District's blanket ban policy so that they can meaningfully and safely attend school in-person.

The District never explains the reasoning behind its rigid refusal to consider masking on an individual basis as a disability accommodation. It conjures up the doomsday image of a "blast radius" that "would ripple through" the public if Students' requested accommodations are given consideration, but it stops short of specifics, hoping that this Court will take the "sky is falling" bait. One of B.B.'s teachers voluntarily masks, yet there is no outcry rippling through the community and school operations have not screeched to a standstill; B.B. is just better protected.

*See* (Coleman Decl., Doc. [77] ¶ 49). The District does, however, cherry-pick parent grievances based on its past universal mask mandate as a harm that allegedly outweighs the threat to Students' health, but it fails to mention the vast number of families, medical experts, and local community members who objected and expressed outrage when the District removed CDC prevention strategies at the height of the Delta variant spread. The vague and undefined administrative burden of providing an individualized inquiry into requested accommodations for students with disabilities does not justify the District's blanket ban on accommodations and is already required by law. *See PGA Tour Inc.*, 532 U.S. at 690-91.

### D. Students have standing to pursue injunctive relief under the ADA and Section 504.

1) <u>The District's failure to accommodate Students is a concrete injury-in-fact that is substantially likely to affect Students in the future.</u>

Students have experienced a concrete and particularized injury in fact and continue to face a real and immediate threat of future injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Wooden v. Bd. of Regents of Univ. System of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (requiring a substantial likelihood or "real and immediate" threat that plaintiffs will be affected by defendant's unlawful conduct in the future for prospective injunctive relief). The ADA confers on Students a legal right to be free from discrimination based on their disabilities, which includes

the right to reasonable accommodations to allow for meaningful access to public programs and services. *See* 42 U.S.C § 12132; 28 C.F.R. § 35.130(b)(7). Invasion of these rights constitutes an injury in fact. *See Houston v. Marod Supermarkets*, *Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) (finding an injury in fact where plaintiff encountered architectural barriers that discriminated against him on the basis of his disability); *S.B. by and through M.B. v. Lee*, 566 F. Supp. 3d 835, 849-50 (M.D. Tenn. 2021) (finding that a school board's "failure to prospectively adopt a mask mandate—the alleged reasonable accommodation— *is* an injury, a concrete, actual, and ongoing injury"). And there is a real and immediate threat that a plaintiff will continue to be affected by unlawful conduct when the alleged injurious conduct is authorized by the defendant or part of the defendant's policy. *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003); *see also Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) (finding that discriminatory conduct was more likely to recur where it was authorized by a municipal policy).

Here, the District concedes that it refused to consider some of Students' requested accommodations, which Students have shown to be facially reasonable and necessary to allow them safe and meaningful access to in-person school. The District further concedes that its policy remains in place. Students have therefore "suffered injury in precisely the form [the ADA] was intended to guard against." *See*

17

*Houston v. Marod Supermarkets*, *Inc.*, 733 F.3d at 1332 (citation omitted). Because the blanket ban policy continues to be enforced, this injury is certain to recur.

Relying on *E.T. v. Paxton*, 41 F.4th 709 (5th Cir. 2022), the District argues that the injury here is "too speculative" as to L.E. and B.B. – who are currently enrolled in the District and attending school without their requested accommodations – because they fail to show that they will catch COVID-19. *See* Defs.' Resp., Doc. [76] at 22-25. However, the District confuses the nature of the injury alleged by Students, which is the failure to accommodate them, not the threat of contracting COVID-19. Students have already suffered this injury. The odds of Students contracting or suffering COVID-19 is, therefore, irrelevant to this analysis, and Students need not show a "certainly impending or substantial risk" of contracting COVID-19 at school for purposes of standing. The holding in *E.T. v. Paxton*, which considered whether the risk of contracting COVID-19 is an injury in fact, is also irrelevant because that is not the injury alleged by Students. 41 F.4th 709 (5th Cir. 2022).

Also, that A.Z. and C.S. have enrolled in private schools since this case was filed does not change this analysis. Standing is determined when a plaintiff's complaint is filed – plaintiffs cannot subsequently "lose" standing as the District

contends.[13] *See Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003); *see also Arc of Iowa*, 2022 WL 16627483 at *4 ("Plaintiffs continue to have standing to bring this action regardless of how much change has occurred" because "standing is determined [when] the action commences."). Regardless, A.Z. and C.S. also maintain a cognizable interest in prospective injunctive relief. The ADA provides students with disabilities, like A.Z. and C.S., an equal *opportunity* to participate in and benefit from public programs and services – denial of which is contemplated by the ADA as an injury in itself. *See* 28 C.F.R. § 35.130 (b)(1)(i). Additionally, the Eleventh Circuit Court of Appeals has confirmed "[where] the cause of [a past] injury continues to exist, and the likelihood of [plaintiff] encountering that cause in the future depends only on [his] own volition," this suggests a real and immediate threat of future injury. *Houston*, 733 F.3d at 1337.

A.Z. and C.S. stated at the outset of this case and maintain that they would like to return to in-person school in the District if necessary and effective accommodations are implemented. And Students are *entitled* to attend public school

---

[13] The District confuses the standards for standing and mootness when it argues that plaintiffs must retain a "'requisite personal interest' in the outcome of a case throughout its duration." Defs.' Resp., Doc. [76] at 18-19; *see KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1302 (11th Cir. 2007) (explaining the different standards).

there, as school-age children who reside in the District.[14] *See* Ga. Const. art. III, § I, para. I; *see also Goss v. Lopez*, 419 U.S. 565 (1975). Thus, A.Z. and C.S. remain "qualified individuals with a disability" under the ADA because they meet "essential eligibility requirements for the receipt of services" from the District. *See* 42 U.S.C. § 12131(2). But they have been and continue to be denied meaningful access to this entitlement and opportunity because of the District's categorical ban on necessary and effective accommodations. The cause of A.Z. and C.S.'s injury – the District's discriminatory policy and practice precluding consideration of their requested accommodations – is ongoing, and they would encounter this injury if they chose to reenroll in the District. This is sufficient to establish a real and immediate threat of injury that is not undone by their choice to enroll in private school at personal expense. *See Houston*, 733 F.3d at 1332. Students should not have to subject themselves to the District's ongoing discrimination to obtain relief.

---

[14] The District argues that their transfer to private schools necessarily deprives A.Z. and C.S. of standing. *See* Defs.' Resp., Doc. [76] at 18-19. However, nearly every case cited in support of this proposition involves plaintiffs who either graduated or transferred from a university. *See id.* This makes them inapposite here, because unlike A.Z. and C.S., those students did not have a constitutional entitlement to attend public school after graduation or to attend university. And the only cited case involving a student with an ongoing entitlement to a public education is inapposite, because the Student withdrew before the district took any adverse action against him. A.Z. and C.S. suffered an adverse action when the District refused to accommodate them.

20

2) <u>An injunction of the District's policy precluding consideration of facially reasonable accommodations would redress Students' injuries.</u>

Students' requested relief would be substantially likely to remedy the ongoing injuries that they suffer, which are fairly traceable to the District's policy. *See Jones v. Piedmont Plus Federal Credit Union*, 335 F. Supp. 3d 1278 (N.D. Ga. 2018) (finding that redressability as an element of standing is established when a favorable decision would amount to a significant increase in likelihood that the plaintiff would obtain relief that directly redresses the injury suffered); *Focus on the Fam.*, 344 F.3d at 1273 ("[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes.").

The District does not contest that Students' injuries are traceable to its policies; though it contends that their requested relief would not remedy these injuries. But Students seek an injunction of the District's policy precluding facially reasonable, effective accommodations from which their injuries directly flow. This relief would allow Students' Teams to consider a full menu of accommodations for Students and implement necessary and effective plans to allow Students safe and meaningful access to the school environment. And courts around the country have agreed in near identical cases that enjoining categorical bans on mask mandates are sufficiently likely to redress injuries based on the failure to accommodate, despite that this not would not guarantee mask mandates to plaintiffs. *S.B.*, 566 F. Supp. 3d

21

at 849-50; *G.S. by and through Schwaigert v. Lee*, 560 F. Supp. 3d 1113, 1126-27

(W.D. Tenn. 2021); *Seaman v. Virginia*, No: 3:22-cv-00006, 2022 WL 872023

(W.D. Va. Mar. 23, 2022); *R.K. v. Lee*, 568 F. Supp. 3d 895 (M.D. Tenn. 2021); *Doe*

*1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668 (E.D. Pa. 2022); *Doe 1 v.*

*North Allegheny Sch. Dist.*, 580 F. Supp. 3d 140 (W.D. Pa. 2022); *Arc of Iowa*, 2022

WL 16627483 at *5.

3) <u>Students are not required to exhaust their remedies.</u>

For the third time, the District argues, to no avail, that Students must exhaust

their administrative remedies. *See L.E.*, 55 F.4th (declining to take up the issue of

exhaustion after the District raised it on appeal). Students need not exhaust their

remedies pursuant to the Individuals with Disabilities Education Act ("IDEA")

because the gravamen of their complaint is concerned with non-discriminatory

access to public education, not denial of a free and appropriate education ("FAPE").

*See Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 752-56 (2017) (finding that where

the gravamen of a suit involves rights under statute other than IDEA and does not

seek relief for denial of FAPE, exhaustion is not required). Students' case

fundamentally involves "equality of access to public facilities, not adequacy of

special education[.]" *See id*. at 756 (holding that plaintiff need not exhaust her claim

based on school district's failure to provide for a service animal in school); *J.S. v.*

22

*Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 986-87 (11th Cir. 2017) (holding that disabled student's exclusion and isolation from the classroom and peers went beyond a mere FAPE violation and therefore did not require exhaustion); *Seaman v. Virginia*, 593 F. Supp. 3d 293, 316-20 (W.D. Va. 2020) (holding that plaintiffs were not required to exhaust their claim challenging the law which prohibited schools from implementing mask requirements); *Arc of Iowa*, 2022 WL 16627483 at *6 (same). Students are not asking this Court to craft individualized accommodations for them. They only seek an injunction of the policy that precludes their teams from considering their requested accommodations.

## Conclusion

Students respectfully request that this Court grant Plaintiffs' Amended Motion for Preliminary Injunction.

Dated: March 17, 2023

Respectfully submitted,

SOUTHERN POVERTY LAW CENTER

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Eugene Choi
Ga. Bar No. 121626
Claire Sherburne
Ga. Bar No. 732244
Brock Boone (admitted *pro hac vice*)
Ala. Bar No. 2864-L11E

23

P.O. Box 1287
Decatur, GA 30031-1287
(334) 956-8273
michael.tafelski@splcenter.org
eugene.choi@splcenter.org
claire.sherburne@splcenter.org
brock.boone@splcenter.org

**LAW OFFICE OF ALLISON B. VROLIJK**

/s/ *Allison B. Vrolijk*
Allison B. Vrolijk
Ga. Bar No. 299360
885 Woodstock Road, Suite 430-318
Roswell, GA 30075
(770) 587-9228
allison@vrolijklaw.com

**GOODMARK LAW FIRM**

/s/ *Craig Goodmark*
Craig Goodmark
Ga. Bar No. 301428
1425 Dutch Valley Place, Suite A
Atlanta, GA 30324
(404) 719-4848
cgoodmark@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

24

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with L.R. 5.1(B) and 7.1 and that this brief is published in 14-point Times New Roman font.

Respectfully submitted,

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, I electronically filed the foregoing Plaintiffs' Reply in Support of Amended Motion for Temporary Restraining Order and Preliminary Injunction using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Brandon O. Moulard
Sherry H. Culves
Ralph Culpepper III
Jeffrey R. Daniel
Parker, Poe, Adams & Bernstein, LLP
1075 Peachtree St., NE
Suite 1500
Atlanta, GA 30309
(678) 690-5750
brandonmoulard@parkerpoe.com
sherry.culves@parkerpoe.com
ralph.culpepper@parkerpoe.com
jeff.daniel@parkerpoe.com

25

Respectfully submitted,

/s/ *Michael J. Tafelski*
Michael J. Tafelski
Ga. Bar No. 507007
Attorney for Plaintiffs

Southern Poverty Law Center
P.O. Box 1287
Decatur, GA 30031-1287
(334) 956-8273
michael.tafelski@splcenter.org

26