IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| L.E., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CHRIS RAGSDALE, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:21-cv-4076-TCB |

**O R D E R**

This case comes before the Court on Plaintiffs' renewed motion [74] for a preliminary injunction.[1] The Court previously denied [54] Plaintiffs' original motion for a temporary restraining order and preliminary injunction. The Eleventh Circuit reversed [65] that decision and remanded the case to this Court for further review. The Court

---

[1] Also before the Court is the motion [81] of Defendants' counsel to withdraw as counsel of record in this case. For good cause shown, that motion [81] will be granted.

conducted a hearing and ordered updated briefing on Plaintiffs' motion, which is now ripe for the Court's review.

## I.  Background[2]

On October 1, 2021, Plaintiffs L.E., B.B., A.Z., and C.S. filed their complaint [1] and an accompanying motion [2] for a temporary restraining order and preliminary injunction. The allegations in the complaint, taken as true, are as follows.

Plaintiffs are four students with disabilities who attend—or previously attended—Cobb County schools. Their disabilities vary but include acute myeloid leukemia, hypogammaglobulinemia, Duchenne Muscular Dystrophy, bronchiectasis (an airway clearance impairment), chronic severe asthma, chronic bronchitis, and pneumonia. Plaintiffs' disabilities make them particularly vulnerable to COVID-19, due to their increased risk for severe symptoms or death from an infection.

Defendants are the individual members of the Cobb County School Board, its superintendent, and the Cobb County School District as an

---

[2] The Court adopts its recitation of the facts in its prior order [54], but includes a brief summary—and updated facts—here.

entity. In summer 2020, in response to the COVID pandemic, Defendants enacted safety policies and restrictions—including masking requirements—meant to limit the spread of the virus.

Plaintiffs' parents made the decision in summer 2021 to send their children back to school for the 2021–22 school year. They were given the option of virtual or in-person learning and—based on assurances from Defendants that COVID restrictions would remain in place—elected to send their children to in-person schooling.

In June 2021, Defendants ended most COVID restrictions for the upcoming school year. Their new policies included optional masking, no COVID vaccination requirements for students or staff, a three-day isolation period—without a testing requirement—following an exposure, and social distancing "when appropriate and feasible."

Because of the changes to Defendants' COVID policies, Plaintiffs' parents removed them from in-person schooling. They aver that the lack of safety measures in place makes the risk of infection significantly higher for the already vulnerable Plaintiffs and that the removal from

in-person schooling has had a negative effect on them socially, physically, and emotionally.

Plaintiffs filed this lawsuit on October 1, 2021. They bring claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, averring that Defendants have unfairly discriminated against them in the administration of public services because of their disabilities and that Defendants' policies and practices have the effect of denying Plaintiffs the benefits of a public education.

After a hearing, the Court denied Plaintiffs' motion for a TRO and preliminary injunction, finding that they were unlikely to succeed on the merits of their underlying ADA and Section 504 claims. Specifically, the Court held that Defendants' virtual school offerings were a reasonable accommodation to Plaintiffs' disabilities and provided them meaningful access to education. Thus, Plaintiffs could not show that they were discriminated against on the basis of their disabilities.

Plaintiffs appealed the denial of the TRO and preliminary injunction. The Eleventh Circuit reversed, holding that the Court had failed to consider the proper "benefit" to which the students were

entitled. Rather than considering whether virtual schooling was a reasonable accommodation to "education," generally, the Eleventh Circuit wrote that the Court should have considered whether virtual schooling was a reasonable accommodation to an "in-person education." *L.E. v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1302–1303 (11th Cir. 2022).

The Eleventh Circuit also found that Plaintiffs had alleged a claim of discrimination by unjustified isolation under *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Thus, the court held that this Court erred in failing to analyze Plaintiffs' likelihood of success on the merits under this theory.

Finally, the Eleventh Circuit held that Plaintiffs' claims were not moot despite the CDC no longer recommending mask mandates in schools. The court held that because Plaintiffs' prayer for relief seeks an order requiring Defendants to comply with CDC guidelines generally, and because Plaintiffs allege that Defendants fail to follow such guidelines, there remains a live controversy for this Court to consider.

On February 22, 2023, the Court held a status conference to ascertain all material factual changes that have occurred since the case's inception.

At the hearing, Plaintiffs indicated that—in the wake of this Court's initial ruling—two of the four students attempted to return to Defendants' schools, and two enrolled in private schools. Both students who returned to Cobb County schools were diagnosed with COVID and spent portions of the 2022–23 school year receiving hospital home-bound ("HHB") schooling services.

Defendants' current district-wide COVID protocols have been further limited since the June 2021 modifications, primarily consisting of promoting good hygiene and offering virtual school options.

Plaintiffs allege that Defendants' district-wide policies prohibit Plaintiffs' Individualized Education Plan ("IEP") teams from considering certain COVID-19 prevention strategies—including masking—as disability "accommodations" on a case-by-case basis. Instead, Plaintiffs assert that district-wide health protocols apply to all students and adjusting those protocols "does not come under the

purview" of the students' IEP teams. [74-1] at 9. Indeed, Plaintiffs assert that the IEP teams are prohibited from "even speak[ing] about the question of masking while on duty." *Id*. at 7.

Plaintiffs ask this Court to enjoin Defendants from imposing and enforcing a "blanket ban" on the students' requested accommodations. In essence, they ask the Court to require Defendants to at least *consider* masking and other health protocols on a case-by-case basis, rather than prohibiting the individualized consideration of such protocols via a district-wide ban.

## II.  Legal Standard

A district court may grant a preliminary injunction or TRO only if the movant shows (1) a substantial likelihood that it will ultimately prevail on the merits of the underlying case; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued, the injunction would not be adverse to the public interest. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010); *see*

*also Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001) (noting that the same legal standard governs motions for preliminary injunction and motions for TRO).

Preliminary injunctions and TROs are considered "drastic remedies," and the burden is on the moving party to satisfy the burden of persuasion as to all four elements. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001).

## III. Discussion

As an initial matter, Defendants argue that because Plaintiffs A.Z. and C.S. no longer attend Cobb County public schools, they lack standing in this case. The Court agrees.[3] Accordingly, it will drop A.Z. and C.S. as parties to this action.

---

[3] Specifically, the Court holds that A.Z. and C.S. cannot show "a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct" of Defendants. *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001). Accordingly, they cannot make out an injury in fact. Additionally, because they no longer attend Cobb County public schools, any injunctive relief the Court may grant would not redress A.Z. and C.S.'s alleged injuries. Thus, they lack standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be "redressed by a favorable decision.").

The likelihood of success on the merits is generally considered the most important of the four factors. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). If Plaintiffs cannot satisfy their burden with respect to this factor, the Court need not consider the other three. *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1329 (11th Cir. 2015).

Plaintiffs bring suit under the ADA and Section 504 of the Rehabilitation Act, which are governed by the same legal standards. *J.S., III by and through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). Both require Plaintiffs to show that (1) they are qualified individuals with a disability; (2) who have been excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or otherwise discriminated against by such entity; and (3) the exclusion, denial of benefits, or discrimination was by reason of such disability. *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011) (citing *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

As the Court previously held, Plaintiffs are "qualified individuals with a disability," and Defendants do not contest the first element of the claims.

Plaintiffs assert that Defendants are discriminating against the students on the basis of their disabilities in two ways: (1) by failing to consider their requested accommodations; and (2) by unjustifiably isolating them from their peers under *Olmstead*. Though the facts have largely changed from this case's inception, the result remains the same: Plaintiffs fail to meet their burden of substantial likelihood of success under either theory.

### A.    Failure to Accommodate

"[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

Plaintiffs assert that "blanket bans on non-frivolous accommodations violate a public entity's obligation to reasonably accommodate individuals with disabilities." [74-1] at 14. They claim that blanket bans run afoul of the ADA's mandate that public entities

10

conduct individualized inquiries and consider personal circumstances when making accommodations.[4]

Defendants' response is twofold: first, they contend that the students are not prevented from accessing an in-person education because of Defendants' COVID prevention strategies (or lack thereof). Indeed, they argue, both B.B. and L.E. accessed in-person instruction in the 2022-23 school year.[5]

Second, Defendants argue that their refusal to mandate masks does not constitute a failure to conduct an individualized analysis. They assert that the ADA does not mandate a "fixed menu" of accommodations that schools must offer. [76] at 34. Rather, they argue,

---

[4] As Defendants point out, Plaintiffs seem to stop short of fully alleging a failure to accommodate claim. Instead, they claim that the blanket ban facially violates the ADA's individualized inquiry requirement, and therefore the Court should enjoin Defendants from enforcing the ban. Defendants allege that Plaintiffs are attempting to artfully plead a failure to accommodate claim despite failing to exhaust administrative remedies as required under the Individuals with Disabilities Education Act ("IDEA"). Because the Court holds that Plaintiffs cannot prove a substantial likelihood to succeed on the merits on their failure to accommodate claims, it need not reach the exhaustion issue.

[5] Defendants assert that L.E. chose to move to HHB services in January 2023 largely because of non-COVID-related absences. They assert that B.B. has attended more than 70% of possible school days, has used no virtual schooling options in the current school year, and has earned high marks in his classes.

the law permits schools to choose the accommodations they provide, so long as they are reasonable and provide meaningful access to the benefit (here, an in-person education).

It is true that Plaintiffs' requested accommodation—specifically, requiring masks—is not facially unreasonable. Indeed, requiring masks *could* constitute a reasonable accommodation to allow Plaintiffs access an in-person education.

That said, "[a] reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff." *Todd v. Carstarphen*, 236 F. Supp. 3d. 1311, 1334 (N.D. Ga. 2017) (citing *Wright v. N.Y. Dep't Corr.*, 831 F.3d 64, 72 (2d Cir. 2016)). "A qualified individual with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation." *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 25 (11th Cir. 2009) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285–86 (11th Cir. 1997)).

Defendants—in conjunction with the students' IEP teams—have conducted individualized inquiries and have provided Plaintiffs with a

host of accommodations in an effort to provide them meaningful access to an in-person education.

L.E. has been permitted to wear a mask and gloves at school; he is given preferential seating and may sit away from any student who is visibly unwell; he does not use communal supplies or shared equipment; school staff disinfect classroom surfaces before L.E. arrives in class; he is permitted to transition to and from classes before other students to avoid hallway congestion; he is provided access to a designated, less-trafficked bathroom; and he is permitted to eat lunch at an alternate location to minimize contact with students while eating.

B.B. is also permitted to transition to and from classes before other students; he may wear a face mask; his aide—though not required to—wears a face mask when interacting with B.B.; and the school has promised to notify B.B.'s parents about any known communicable diseases in his classroom.[6]

---

[6] Defendants have also implemented several general health and safety measures that comply with CDC and Georgia Department of Health guidelines. Defendants' schools have strict disinfection procedures that include additional fogging and disinfecting whenever a positive case is reported. They also have daily cleaning procedures for communal areas; they use specialized machines to disinfect restrooms; the cafeteria is disinfected in between classes; hand sanitizing stations

In addition, both students have access to Defendants' virtual school offerings. Over 1,000 students in Defendants' schools currently participate in virtual offerings. Defendants assert that 77% of the students enrolled in virtual programs are non-disabled. They note that teachers are specially trained in the delivery of online courses, and the virtual courses provide real-time interaction between teachers and students—as well as student-to-student interactions.

"The hallmark of a reasonable accommodation is effectiveness." *Wright*, 831 F.3d at 72 (citing *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015)).

Simply put, Defendants' accommodations have been effective. B.B. has attended in-person for more than 70% of possible school days and is receiving all A's. Though L.E. currently receives HHB services, he attended some in-person schooling between August and December 2022 before accumulating absences because of non-COVID illnesses. L.E. is passing all of his classes, is progressing in all of his IEP goals and

---

are installed on buses and throughout their facilities; they have optimized their ventilation system in school facilities; and they instruct teachers, students, and families to stay home if they experience any symptoms of COVID-19.

objectives, and is still free to access virtual schooling—though he currently uses HHB services in lieu of virtual classes.

In addition, Defendants' general COVID-mitigation strategies have largely been successful. COVID cases are declining in Cobb County schools. Moreover, deaths have dramatically decreased, and widespread vaccinations have driven down the number of severe cases both locally and nationally.

Defendants have conducted individualized inquiries and have provided Plaintiffs with reasonable accommodations to allow them meaningful access to an in-person education. And those measures have by-and-large been effective, allowing the students to attend in-person schooling as often as their health allows.

The Court will not simply impose Plaintiffs' preferred accommodation upon Defendants.[7] Nor will the Court require Defendants to consider a specific accommodation when it finds that other accommodations are both effective and reasonable. *See R. K. by*

---

[7] Additionally, the Court notes that Georgia law prohibits school systems from requiring students and employees to wear a mask without the ability to opt-out. O.C.G.A. §§ 20-2-59, 20-2-779.2, 20-2-2077, 20-2-2094.

*and through J. K. v. Lee*, 53 F.4th 995, 1001 (6th Cir. 2022), *reh'g denied,* No. 22-5004, 2022 WL 18434486 (6th Cir. Dec. 28, 2022) ("[P]laintiffs nowhere explain why universal masking and quarantining constitute the only reasonable accommodations under the ADA. There is reason to think that a more tailored accommodation—perhaps even [a] six-foot bubble accommodation . . . would be sufficient to comply with the ADA."); *E.T. v. Paxton*, 19 F.4th 760, 768 (5th Cir. 2021) ("The district court's analysis rests on the faulty premise that the *only* accommodation available to plaintiffs is their schools' ability to impose mask mandates. But . . . there are any number of other ways schools could accommodate plaintiffs' disabilities without traversing [a state executive order banning mask mandates] or federal law.").

Because the Court holds that Plaintiffs have been offered meaningful access to an in-person education, they cannot show a substantial likelihood of success on the merits of their failure to accommodate claim.

## B.     Unlawful Segregation under *Olmstead*

Plaintiffs also allege that Defendants' policies have caused them "unjustified isolation" from their peers. [74-1] at 18. This, they allege, is an actionable form of disability discrimination under the ADA and *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

"Unjustified isolation . . . is properly regarded as discrimination based on disability." *Olmstead*, 527 U.S. at 597; *see also J.S.*, 877 F.3d at 987 (holding that a student's removal from class "excluded and isolated from his classroom and peers on the basis of his disability" and "implicate those further, intangible consequences of discrimination contemplated in *Olmstead* that could result from isolation, such as stigmatization and deprivation of opportunities for enriching interaction with fellow students").

Defendants' policies do not have the effect of unjustly isolating or segregating Plaintiffs based on their disability. Because the students are immunocompromised, Defendants' provided accommodations necessarily effect some level of separation between Plaintiffs and other

students. L.E.'s separate lunch location,[8] the students' option to depart classes early,[9] and the socially distanced classroom seating[10] are brief instances of "isolation" that were agreed to by the students' IEP teams as necessary to help prevent the students from contracting communicable diseases.

Additionally, as the Court previously found, Plaintiffs have access to ample virtual schooling options with specially trained teachers and real-time interaction with teachers and peers. More than three-quarters of the students who attend Defendants' virtual school offerings are non-disabled. Plaintiffs are simply not being segregated based on their disability. Particularly now, in the wake of the unprecedented proliferation of remote school and work options, this Court will not hold that attending virtual schooling constitutes "unjustified isolation."

---

[8] The Court is unsure how requiring masking would alleviate the need to isolate L.E. during lunch, when wearing a mask is impractical.

[9] To require masking during class transitions would mean ordering virtually the entire student body to wear masks at a given time—something the Court is unwilling to do.

[10] The Court finds it unlikely that—even if masks were required—Plaintiffs' IEP teams would suggest foregoing social distancing and preferential seating for the students.

That despite the reasonable accommodations they have been offered, Plaintiffs' illnesses—COVID or otherwise—have caused them to stay home from school does not subject Defendants to *Olmstead* liability. That Plaintiffs have voluntarily chosen online learning or HHB services does not mean they have been unjustly segregated from their peers. Plaintiffs have presented no evidence that they have been involuntarily removed from their classes or otherwise involuntarily segregated from their peers.

Accordingly, Plaintiffs have failed to show a likelihood of success on the merits of their *Olmstead* claims, and the Court will deny their renewed motion for a preliminary injunction.

## IV.   Conclusion

Because Plaintiffs cannot show a substantial likelihood of success of their disability discrimination claims, the Court need not consider the alleged irreparable injury from which they suffer. Nor need it balance the equities or consider the public's interest.

For the foregoing reasons, Plaintiffs' amended motion [74] for a preliminary injunction is denied. Additionally, Plaintiffs A.Z. and C.S.

are dropped as parties to this action for lack of standing. Finally, Defendants' motion [81] to withdraw as counsel is granted.

IT IS SO ORDERED this 4th day of April, 2023.

                                                            _____
                                                            Timothy C. Batten, Sr.
                                                            Chief United States District Judge